State v. Scott

---

STATE OF NORTH CAROLINA v. BEN FRANK SCOTT AND EULA MAE JACOBS

No. 7516SC203

(Filed 4 June 1975)

**1. Homicide § 21— first degree murder — sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for first degree murder of the femme defendant's husband where it tended to show that femme defendant owned a .22 pistol and stated many times that she was going to kill her husband, femme defendant stated that she would get some insurance if her husband were dead, the male defendant's car was at femme defendant's house almost daily during the two weeks prior to decedent's death, defendants and decedent

were together on the night of the death, five shots were heard at decedent's home about midnight, 35 minutes later defendants arrived at the home of the femme defendant's niece, the femme defendant was wearing a nightgown, the femme defendant gave the male defendant six or seven .22 cartridges, the femme defendant was crying and very nervous, an unidentified male called the sheriff's department from a pay telephone at 3:10 a.m. and told the dispatcher that someone was hurt at decedent's home, the male defendant was seen in a pay telephone booth at the time of the call, defendants left the next day to go see a lawyer, the femme defendant's .22 pistol was missing after the killing, decedent died from wounds from .22 bullets, and femme defendant was the beneficiary of $21,000 of insurance on the life of decedent.

2. **Criminal Law § 116— defendant's failure to offer evidence — incomplete instruction**

The trial court committed prejudicial error in instructing the jury that defendants elected, as they had a right to do, not to offer evidence without further instructing the jury that defendant's failure to offer evidence should not be considered against them.

Judge PARKER dissenting.

APPEAL by defendants from *Clark, Judge.* Judgments entered 25 October 1974 in Superior Court, ROBESON County. Heard in the Court of Appeals 8 May 1975.

Defendants Ben Frank Scott (Scott) and Eula Mae Jacobs (Eula Mae) were charged in separate indictments with the first-degree murder of Wallace Jacobs (Jacobs), Eula Mae's husband, on 19 June 1974. They pleaded not guilty, the jury returned verdicts of guilty of second-degree murder, and from judgments imposing prison sentences of not less than 25 nor more than 30 years, they appealed.

*Attorney General Edmisten, by Assistant Attorney General James E. Magner, Jr., for the State.*

*I. Murchison Biggs & Associates, by I. Murchison Biggs, for defendant appellant Scott.*

*Musselwhite, Musselwhite & McIntyre, by Fred L. Musselwhite and C. S. McIntyre, Jr., for defendant appellant Jacobs.*

BRITT, Judge.

[1] Defendants contend that the trial court erred in not allowing their motions for nonsuit. The State's evidence (defendants presented no evidence) tended to show:

Ida Mae Locklear testified: On 16 June (1974) she drove Eula Mae to get some beer. On that occasion Eula Mae had a gun which she fired into the ground and stated that she was going to kill Jacobs.

Anderson Locklear testified: Eula Mae is his wife's aunt. Defendants came to his home in Cumberland Mills, near Fayetteville, on 17 June 1974 at approximately 2:45 p.m. While there Eula Mae took a .22 pistol "out of her bosom . . . held it side the car, and shot it 3, 4 times." Scott left about 3:05 p.m. Eula Mae spent the night, leaving the next morning at approximately 7:00 or 7:30 a.m. and returning to Pembroke.

Dorothy Locklear testified: She lives about 100 yards from the Jacobs home. Between January and June (of 1974) she heard Eula Mae state 12 or 15 times that she was going to kill him (referring to Jacobs). In the spring, she took Eula Mae to Lumberton where Eula Mae bought a box of .22 shells. In the first part of June, Eula Mae stated that she was "going to kill that [S.O.B.] of mine" and that while she was talking to Dorothy she had a .22 pistol "in her bosom." Eula Mae stated that if Jacobs were dead she could get some insurance. When she stopped talking to Dorothy, she left and started shooting the gun. During the two weeks prior to 18 and 19 June, Scott's car (a 1965 white Ford) was at Jacobs' house 10 or 12 times. His car was there almost daily. On 18 June, she first observed Scott's car at the Jacobs home around 2:00 p.m. and saw Scott with Eula Mae around 3:00 to 4:00 p.m.

Lefty Lee Cummings testified: Eula Mae is his mother and Jacobs was his stepfather. He worked at Spring Mills in Wagram. On 18 June, at approximately 6:00 p.m., while getting his pajamas out of his dresser drawer at the Jacobs home, he saw a .22 pistol in the drawer. He went to bed and later Scott woke him up and told him to get ready for work. When he left for work at 11:10 p.m. on 18 June, Eula Mae, Scott, and Jacobs were all in the house. Earlier that day, Jacobs had slapped his mother, hit her in her rib cage, and told her never to return to the house. He saw his mother shoot the .22 pistol two or three times during the three-week period prior to Jacobs' death. She had owned the .22 pistol approximately one year.

Dorothy Locklear testified: At approximately 11:20 p.m. on the night of 18 June 1974 (Tuesday), Scott's white car was still parked at the Jacobs house. At midnight she heard five shots but went back to sleep.

Anderson Locklear testified: At approximately 12:35 a.m. Tuesday night or Wednesday morning, 19 June 1974, defendants arrived at his home in Cumberland Mills. It takes approximately 30 to 35 minutes to drive from the Jacobs home to his home. He heard Scott tell Eula Mae to "[g]ive me them things you got," and he saw Eula Mae give him six or seven .22 cartridges out of her handbag. Scott then left but returned later that day (Wednesday morning) at about 11:00 a.m. or 12:00 noon. On the same day Eula Mae was taken to see a doctor in Pembroke.

Annie Jane Locklear, Anderson's wife and Eula Mae's niece, gave testimony similar to that of her husband. She further testified: She heard Eula Mae provide Scott with a telephone number and tell him to contact her son Lefty. The number provided was that of Annie Jane's neighbor. Eula Mae was dressed in her nightclothes when she arrived at Annie Jane's house. Scott left about 5 or 10 minutes later. Annie Jane described her aunt as "crying, shaking, very, very nervous." She told defendants that the law was coming for them. When Eula Mae and Scott left on Wednesday, Scott was going to take Eula Mae to see a lawyer.

Lefty Lee Cummings testified: At around 2:00 or 2:15 a.m. (on 19 June 1974) Scott "showed up" at the plant (at Wagram) and told him that Eula Mae had gone to Fayetteville and gave him a phone number. Scott told him to call the number and not to go home when he got off work but to go to his aunt's house. He arrived back at his home at about 6:00 a.m., looked in his dresser drawer and the .22 pistol was gone.

Andrew Cummings testified: Eula Mae is his mother and he works at the Osterneck Plant in Lumberton. He got off work on the morning of 19 June at 3:01 a.m. As he was leaving work in his car, he saw Scott in a pay telephone booth (in Lumberton) at 3:09 a.m.

Gerald Martin testified: He is a dispatcher for the Robeson County Sheriff's Department. On the morning of 19 June 1974, at approximately 3:10 a.m., he received a phone call from an unidentified male subject asking that police go to Wallace Jacobs' house in the Pembroke area, advising that there had been a break-in and someone was hurt. (A telephone operator testified that this call came from a pay telephone in Lumberton.)

Bobby Honeycutt testified: He is a Deputy Sheriff of Robeson County. On the morning of 19 June, he arrived at the home of Wallace Jacobs at approximately 3:30 a.m. He found that the screen had been torn out, apparently from the inside, and the window was open about 12-18 inches. He found Wallace Jacobs' nude body on the floor in the kitchen with an air rifle across his arm. (Later testimony by Hubert Stone indicated that a box of pellets were in his hand.)

Hubert Stone testified: He is a deputy sheriff and detective with the Robeson County Sheriff's Department, having been employed by the department for 21 years. He went to the Wallace Jacobs home on the morning of 19 June 1974. He observed the body of Jacobs and saw wounds about his head and body—one wound about the size of a .22 bullet behind his right ear and another wound about the size of a .22 bullet just below the left side of his nose. He also found two holes about the size of a .22 bullet in the wall, found one spent .22 cartridge, two .22 calibre bullets in a dresser drawer, and a box of .22 bullets in a closet where a woman's clothes were hanging. Scott and Eula Mae were arrested on 19 June. The gun was never found.

Dr. Marvin Thompson testified: He is a pathologist at Southeastern General Hospital in Lumberton. He examined the body of Wallace Jacobs subsequent to 19 June 1974. In his opinion the death of Jacobs was caused by gunshot wounds.

W. W. Wallace testified: He is employed by Kanawha Insurance Co., Lancaster, S. C., as Vice President. At the time of Wallace Jacobs' death, his company had policies outstanding on the life of Jacobs providing death benefits approximating $21,000 with Eula Mae as the beneficiary.

Clearly, the evidence was sufficient to survive defendant Jacobs' motion for nonsuit. While the case presented against defendant Scott was not as strong, we think that when the evidence admitted against Scott is considered in the light most favorable to the State, and giving the State the benefit of every reasonable inference fairly deducible therefrom, it was sufficient to survive his motion for nonsuit. We hold that the court did not err in overruling the motions.

[2] Defendants assign as error a portion of the trial court's instructions to the jury. As stated above, neither defendant introduced evidence. In its jury charge, after summarizing the evidence presented by the State, the court gave the following

instruction: "The defendant Scott elected, as he had the right to do, not to offer evidence. The defendant Jacobs elected, as she had the right to do, not to offer evidence."

Defendants contend an almost identical instruction was held to be prejudicial error, requiring a new trial, in *State v. Baxter*, 285 N.C. 735, 208 S.E. 2d 696 (1974). As was true in *Baxter*, defendants in the case at hand made no request for an instruction concerning their failure to offer evidence, and there was no other statement in the charge with respect thereto.

We find it impossible to distinguish the instant case from *Baxter*, therefore, we have no alternative to granting the defendants a new trial. However, in fairness to the able judge who presided over the trial of the case *sub judice*, we point out that this case was tried at a session of the court commencing on 14 October 1974, and that the opinion in *Baxter*, while filed on 10 October 1974, had not been published in the Advance Sheets nor otherwise given general circulation prior to the date the jury was charged in this case.

We do not discuss the other questions argued in the briefs as they probably will not arise at a retrial.

For the reason stated, defendants are granted a

New trial.

Judge VAUGHN concurs.

Judge PARKER dissents.

Judge PARKER dissenting: I agree that the State's evidence was sufficient as to each of the defendants to withstand their motions for nonsuit and that these motions were properly denied. However, because I cannot see how the jury could possibly have been misled to defendants' prejudice by the mere statement in the trial judge's charge, which was made immediately following his summation of the State's evidence, that defendants elected, as they had a right to do, not to offer evidence, and because I most respectfully hope that our Supreme Court will reexamine its holding in *State v. Baxter*, I dissent from the award of a new trial in this case.